UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DAVID BRUEDERLE                                                                             PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:05-CV-818-S

LOUISVILLE METRO GOVERNMENT, et al.                       DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on the motion of the defendants, Sergeant Tamiko Joyner, Officer Roberto Grider, Officer John Black, Sergeant Michael Joyner, Officer Clarence Williams, and Sergeant Michael Hogan (collectively "Defendants"), to dismiss the plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendant, Sergeant Michael Joyner, also moves, individually, to quash the summons and complaint that were issued by Bruederle but erroneously served on the wrong person.

When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *See Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). For the reasons stated herein, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

The First Amended Complaint alleges that the plaintiff, David Bruederle ("Bruederle"), "was physically and verbally abused and denied much-needed medial attention/treatment" while incarcerated within the custody of the Louisville Metro Corrections Department. Counts I-III allege state law claims, including allegations of statutory violations, negligence and gross negligence, and the tort of outrage.[1] Count V alleges that Bruederle was subjected to cruel and unusual punishment

---

[1] Count IV, which alleges professional malpractice, is not against Defendants.

in violation of the Eight Amendment to the United States Constitutional and Section 17 of the Kentucky Constitution.

Paragraph Eleven of the First Amended Complaint contends that Bruederle entered the jail on December 3, 2004, and that "at that time," Defendants refused to give him his medications. Paragraph Twelve alleges that Bruederle began to manifest signs of pain medication withdrawal on December 5, 2004, "passed out" from a detoxification seizure, was strapped in a chair and shackled after he woke up, was not taken to a hospital, was given a pill by a nurse, and was kept shackled and restrained in a chair for four hours. Paragraph Thirteen alleges that Bruederle was then escorted to a medical dormitory, where he stopped breathing, and that after a nurse restored his breathing, was shoved in a chair when he tried to stand up.

Bruederle's original Complaint was first filed in Jefferson Circuit Court on November 30, 2005, and named three defendants: Louisville Metro Government, Louisville Metro Corrections Director Tom Campbell, and Correctional Medical Services, Inc. The Complaint also listed as defendants, "John or Jane Doe, M.D.", "John or Jane Doe" nurse, and "Jone or Jane Does 1, 2, and 3 . . . as officers and employees of the Louisville Metro Department of Corrections." Because the Complaint alleged a violation of Bruederle's Eight Amendment rights, the case was removed to the United States District Court based on original jurisidiction.

On September 27, 2006, Bruederle filed his First Amended Complaint naming Defendants. The First Amended Complaint alleges that Defendants established policies, were responsible for the employment, training, supervision, and conduct of jail employees and officers, and participated in Bruederle's mistreatment as described in the complaint. Bruederle also named as additional defendants four Correctional Medical Services, Inc. employees or agents: Lawrence R. Mudd, M.D., and nurses Wyllis Smith, Jenese Joyner, and Cindy Payne.

## ANALYSIS

### I. Request to Quash Summons and Complaint by Defendant Sergeant Michael Joyner

The court will first consider the request of Defendant, Sergeant Michael Joyner, to quash the summons and complaint that were issued by Bruederle but erroneously served on Sergeant Gregory Lamont Joyner. Defendant argues that Bruederle's mistake constitutes a deficient or bad service of process, and as such, Defendant should be dismissed from this suit.

Fed. R. Civ. Proc. 4 requires a plaintiff to serve the defendant with a summons and complaint within one hundred twenty days after filing of the complaint. "If service of the summons and complaint is not made upon a defendant within 120 days after filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause of the failure, the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Here, Bruederle neither contests deficiency of service nor provides an excuse for that deficiency, and the court has no record of Sergeant Michael Joyner ever being served. Thus, we are compelled to dismiss all claims against Sergeant Michael Joyner for deficient service of process.

### II. Section 1983 Claims

For 42 U.S.C. § 1983 claims, federal courts "borrow" the most closely analogous state statute of limitations. *Owens v. Okure*, 488 U.S. 235, 240, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989). When the state has multiple personal injury statutes, courts should borrow the state's general or residual personal injury state of limitation. *Id.* at 249-50; *see also Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990).

Defendants assert that the statute of limitations to be borrowed is one-year pursuant to Ky. Rev. Stat. § 413.140(1)(a). Bruederle, however, Responds that his § 1983 claims are subject to the five-year statute of limitations provided for in Ky. Rev. Stat. § 413.120, which states that "[a]n

action upon a liability created by statute, when no other time is fixed by the statute creating liability[]" or "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated" shall be commenced within five years after the cause of action accrued. *Id.*

The Sixth Circuit previously addressed this issue in *Collard*, where the plaintiff brought a § 1983 claim alleging a violation of her due process rights. With regard to the applicable statute of limitations, the plaintiff argued "that the five-year statute [in § 413.120(6)] should apply since she sustained no 'injury to the person' but, rather, an injury to '[her] rights.'" *Id.* at 181. The Sixth Circuit, however, while recognizing that the plaintiff's claim "partakes of 'an injury to the rights of the plaintiff,'" noted that in borrowing statutes of limitations for federal claims, the Supreme Court has generally recognized that the problem of characterization is ultimately a question of federal law, and concluded "that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)." *Id.* at 182.

Moreover, federal law determines the accrual of a § 1983 claim. *Id.* (finding that federal law governs when the limitations period begins to run). In *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984), the Sixth Circuit held that the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his action. *Id.* at 273. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Id.*

The court sees no reason why we should deviate from precedent. Accordingly, we find that Bruederle's § 1983 claims are subject to the one-year statute of limitations in § 413.140(1)(a) and that his claims accrued no later than December 5, 2004, when he allegedly experienced a seizure, was not transported to the hospital, was strapped in a chair, was shackled and restrained for four hours, stopped breathing, and was shoved back down in a chair after his breathing was restored. Thus, Bruederle had until December 5, 2005, to file suit against Defendants. However, Bruederle did not file suit against Defendants until September 27, 2006, more than one year and nine months

after his cause of action accrued. *See Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973) ("An amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations"); *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999) (finding that Fed. R. Civ. P. 15(c)(3) permits relation back only if the defendant to be added "knew of should have known that , but for a reasonable mistake concerning identity of the proper party," the action would have been brought against him); *Simmons v. South Central Skyworker's, Inc.*, 936 F.2d 268, 269 (6th Cir. 1991) (explaining that Rule 15(c) should not be misinterpreted as a general tolling statute that tolls the limitations period while a plaintiff seeks the identity of the person causing his injury). As such, the court finds Bruederle's § 1983 claims barred as against Defendants and will accordingly dismiss them.

### III. State Law Claims

Bruederle also brings state law claims for violation of Ky. Rev. Stat. § 71.040, negligence and gross negligence, cruel and unusual punishment in violation of the Kentucky Constitution, and intentional infliction of emotional distress. All but his claim for intentional infliction of emotional distress are subject to dismissal.

### A. Kentucky Revised Statute Section 71.040

Ky. Rev. Stat. § 71.040 imposes upon the jailer a statutory duty to humanely treat prisoners. *Id.* Titled "Treatment of prisoners," § 71.040 provides that:

> At the time of booking, the jailer shall receive and keep in the jail all persons who are lawfully committed thereto, until they are lawfully discharged, unless the person is in need of emergency medical attention, in which case the arresting officer shall obtain medical attention for the person prior to delivery to the jail. The jailer shall treat them humanely and furnish them with proper food and lodging during their confined. He shall deliver those who die in jail to their friends, if requested, or have them decently buried at the expense of the county.

*Id.*

Meanwhile, Ky. Rev. Stat. § 446.070 "creates a private right of action for the violation of any statute," so long as "the plaintiff belongs to the class intended to be protected by the statute." *State Farm Mutual Automobile Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988). Bruederle is clearly a member of the class contemplated by § 71.040. Nonetheless, Defendants argue that section "71.040 cannot serve as a basis of liability against these defendants. Although KRS Chapter 67B transfers prisoner incarceration duties, previously vested in the Offices of Jailer and Sheriff, to a metropolitan correctional services department created by a consolidated local government, those duties became vested in the department, not in consolidated local government employees." We agree.

Pursuant to Ky. Rev. Stat. § 67B.030(2),

> [u]pon the creation of maintenance of a metropolitan correctional services department by the consolidated local government or fiscal court of a county containing a city of the first class, in which the constitutional offices of sheriff and jailer have been consolidated pursuant to Section 105 of the Constitution of the Commonwealth of Kentucky, all of the duties, responsibilities, and liabilities of the sheriff and jailer as sent forth and contained in the Kentucky Revised Statutes, with reference to the operation and maintenance of the county jail and all county correctional facilities shall immediately be vested in the department . . . .

*Id.*

On January 6, 2003, Jefferson County and the City of Louisville merged to form a consolidated government, Louisville Metro Government. Pursuant to Louisville Metro Ordinance § 30.20(F)(2), a Louisville Metro Corrections Department was created and the offices of Sheriff and Jailer were consolidated as provided in Section 105 of the Constitution of the Commonwealth of Kentucky pursuant to Ky. Rev. Stat. § 71.110. Thus, as Defendants argue, the duties normally imposed on the county jailer are vested in the Louisville Metro Corrections Department as required by § 67B.030(2). However, a plain reading of § 67B.030(2) fails to indicate that those duties also

extend to Louisville Metro Corrections employees. As such, Bruederle has no claim against Defendants for violation of § 71.040.

### B. Negligence and Gross Negligence and Cruel and Unusual Punishment

Bruederle's claims for negligence and gross negligence and cruel and unusual punishment must also be dismissed as they are barred by the one-year statute of limitations in § 413.140(1)(a). In *Stivers v. Elligton*, 104 S.W.3d 599 (Ky. Ct. App. 2004), it was held that the plaintiff's claims of negligence were governed by § 413.140(1)(a) and not § 413.020. Bruederle's claim for violation of the Kentucky Constitution is also governed by § 413.140(1)(a).

The court finds *Million v. Raymer*, 139 S.W.3d 914 (Ky. 2004), instructive on why § 413.140(1)(a) governs Bruederle's claim for cruel and unusual punishment in violation of the Kentucky Constitution. In *Million*, the plaintiff argued that the five-year statute of limitations in § 413.120 applies to suits for violations of due process rights under the Kentucky Constitution. *Id.* The Kentucky Supreme Court disagreed, finding that the plaintiff's claim was analogous to federal constitutional claims made under 42 U.S.C. § 1983, which are governed by the one-year limitations period under § 413.140(1)(a). *Id.* at 919. Bruederle makes the same claim for cruel and unusual punishment in violation of the Kentucky Constitution, as he does for violation of the Eight Amendment to the U.S. Constitution, which, as explained above, is barred by the one-year limitations period under § 413.140(1)(a). Thus, his analogous claim under the Kentucky Constitution is also barred.

### C. Tort of Outrage/Intentional Infliction of Emotional Distress

Defendants also ask that Bruederle's claim for intentional infliction of emotional distress, also known as the tort of outrage and governed by a five-year limitations period, be dismissed. They argue that the "tort of outrage was never intended to supplant those traditional claims where the plaintiff's statute of limitations period has run, or to serve as the basis for frivolous claims." Defendants cite as support *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App.

1993), in which the court stated that a necessary element for the tort of outrage is that the conduct of the defendants have been "intended only to invade the plaintiff's interest in freedom from emotional distress," and therefore, where a defendant's conduct "amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Id.* However, Defendants' alleged conduct may have amounted to more than a traditional tort if their actions went beyond mere assault, battery, or negligence and were sufficiently outrageous.

A cause of action for outrage lies against "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." Restatement (Second) of Torts § 46 (1965). The elements of proof necessary to sustain such an action include: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Humana of Kentucky, Inc. v. Seltz*, 796 S.W.2d 1, 2-3 (Ky. 1990) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)).

According to Defendants, Bruederle has not alleged facts of outrageous conduct sufficient to support a claim for outrage. The court disagrees. A plaintiff need not plead in detail all the particularities of his claim. *Lillard v. Shelby County Bd. of Education*, 76 F.3d 716, 726 (6th Cir. 1996). He need only provide the defendants with fair notice of his claim and the grounds upon which that claim rests. *Id.* According to his First Amended Complaint, Bruederle allegedly experienced a seizure, was not transported to the hospital, was strapped in a chair, was shackled and restrained for four hours, stopped breathing, and was shoved back down in a chair after his breathing was restored. Bruederle asserts that these acts and omissions go beyond the bounds of human decency and that

as a result he suffered severe mental and emotional distress. The court finds these allegations sufficient to state a claim for outrage. As such, Bruederle's claims of outrage are properly before this court and survive Defendants' Motion to Dismiss.[2]

A separate order will be entered in accordance with this opinion.

---

[2]The court notes that it retains "pendant party" jurisdiction over Bruederle's outrage claim. "Pendant party" jurisdiction permits the court to exercise jurisdiction over a plaintiff's state law claim against a defendant even though the federal claim against that defendant has been dismissed, so long as the state law claim is closely related to a federal claim that remains against another defendant. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1360-61 (7th Cir. 1985) (finding substantial authority in other circuits for the court to exercise pendent party jurisdiction over state law false arrest and imprisonment claims against the defendant, even though section 1983 conspiracy claim against the defendant had to be dismissed, given the close relationship of the claims against the defendant and the remaining section 1983 claims against law enforcement officers). Here, the outrage claim against Defendants arises out of the same facts upon which Bruederle asserts his § 1983 claims against Louisville Metro Government and Tom Campbell.